**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darren MacDonald,<br><br>        Plaintiff,<br><br>v.<br><br>Rocket Mortgage LLC,<br><br>        Defendant. | No. CV-23-02558-PHX-KML<br><br>**ORDER** |

Darren MacDonald filed a putative class action against Rocket Mortgage, LLC, alleging a claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The complaint alleges Rocket Mortgage violated the TCPA by calling and texting MacDonald despite his number being on the National Do Not Call Registry ("DNC"). Rocket Mortgage seeks to compel arbitration because MacDonald allegedly agreed to arbitrate any TCPA claims when he used one of Rocket Mortgage's websites. The motion to compel arbitration is granted.

**I.  Standard for Motion to Compel**

In resolving a motion to compel arbitration the court utilizes "the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). This requires "view[ing] the evidence in the light most favorable to the nonmoving party." *Rocha v. Asurion, LLC*, 724 F. Supp. 3d 1213, 1219 (E.D. Wash. 2024). Unless otherwise noted, the following facts are undisputed.

## II.     Factual Background

Rocket Mortgage is a mortgage lender that provides home loan and refinancing services. (Doc. 1 at 4.) In conducting its business, Rocket Mortgage "makes telemarketing calls to solicit its mortgage services to consumers." (Doc. 1 at 4.)

On June 8, 2022, MacDonald visited www.quickenloans.com, one of Rocket Mortgage's websites. During that visit MacDonald "voluntarily submitted an online request to receive information . . . about [Rocket Mortgage's] products." (Doc. 13 at 3.) The submission process required MacDonald to navigate through a series of eighteen webpages, providing different types of information on each page. (Doc. 26-2 at 1.) Each page had a footer that contained hyperlinks, including a hyperlink to the "Terms of Use." (Doc. 26-2 at 1.) When MacDonald reached the final page, he encountered a button labeled "Click to See your Results!" (Doc. 26-2 at 10.) Below that button was a section of text titled, in bold black text, "Communication Consent." The text in that section was in a smaller font than the other portions of the page. The text was black against a white background, except for certain phrases in blue font that were hyperlinks to other pages. The phrases were not underlined. The page appeared as depicted below:

[screenshot of Quicken Loans webpage showing 96% progress indicator, Current Mailing Address field, ZIP Code field, "Click to See Your Results!" button, "Go Back" link, and Communication Consent text block reading: "By submitting your contact information you agree to our Terms of Use and our Security and Privacy Policy. You also expressly consent to having Rocket Mortgage, our Family of Companies, and potentially our mortgage partners contact you about your inquiry by text message or phone (including automatic telephone dialing system or an artificial or prerecorded voice) to the residential or cellular telephone number you have provided, even if that telephone number is on a corporate, state, or national Do Not Call Registry. You do not have to agree to receive such calls or messages as a condition of getting any services from Rocket Mortgage or its affiliates. By communicating with us by phone, you consent to calls being recorded and monitored. You also agree that we can share your personal data and contact information with third parties such as mortgage partners, partner companies, and affiliates, and that these parties may use your personal data and contact information for marketing and analytic purposes, and to improve your experience."]

The first sentence of the "Communication Consent" section stated, "By submitting your contact information you agree to our Terms of Use and our Security and Privacy Policy." (Doc. 26-2 at 10.) Clicking on the "Terms of Use" hyperlink led to a lengthy document containing the provisions that would govern MacDonald's relationship with Rocket Mortgage. That document consisted of ten pages of text when presented as a PDF. (Doc. 13-3 at 2–12.) On the ninth page, there was a section titled "Governing Law." (Doc. 13-3 at 10.) That section stated Michigan law governed the terms of use and MacDonald was required to "arbitrate TCPA claims." (Doc. 13-3 at 10.)

The evidence establishes MacDonald entered his address information and clicked on the "Click to See your Results!" button.[1] (Doc. 13-1 at 3.) After clicking that button, Rocket Mortgage called and sent a text message to MacDonald's number that was on the DNC. (Doc. 1 at 9–11.) In December 2023, MacDonald filed his complaint alleging a single TCPA claim.[2] (Doc. 1 at 13.)

### III. Analysis

#### A. Motions to Compel Arbitration

"The Federal Arbitration Act (FAA) requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing 9 U.S.C. § 3). "The FAA limits

---

[1] In his opposition to the motion to compel arbitration, MacDonald argues about the contents of "the website Rocket Mortgage claims [he] visited." (Doc. 26 at 1.) That is the only time MacDonald suggests he did not visit the website or click the relevant button, and he has not submitted any evidence countering Rocket Mortgage's evidence that he visited the website and clicked the button. "Unsupported allegations made in briefs are not sufficient to defeat a motion for summary judgment," nor are they sufficient in the context of a motion to compel arbitration. *Stanley v. Univ. of S. California*, 178 F.3d 1069, 1076 (9th Cir. 1999).

[2] Rocket Mortgage responded to the complaint by filing a motion to compel arbitration and a motion to dismiss. (Docs. 13, 14.) The parties attended a case management conference before MacDonald filed an opposition to either motion. (Doc. 20.) At that conference in February 2024, MacDonald indicated he planned to oppose the motion to compel arbitration by arguing he had never visited the website where he allegedly consented to arbitrate any disputes. (Doc. 25 at 9.) MacDonald also stated he planned to submit declarations supporting his factual positions. (Doc. 25 at 9.) The parties were allowed to proceed with limited discovery aimed at the issue of arbitration and briefing on the motion to dismiss was stayed. (Doc. 23 at 2.) In March 2024, MacDonald filed his opposition to the motion to compel arbitration. That opposition was not accompanied by a declaration from MacDonald or anyone else. (Doc. 26.)

the court's role to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Id.* (simplified). MacDonald does not contest the Rocket Mortgage arbitration provision encompasses his TCPA claim. But MacDonald does dispute whether an agreement to arbitrate was validly formed.

### B. Formation of Agreement to Arbitrate

"[I]n assessing whether an arbitration agreement or clause is enforceable, the [court] should apply ordinary state-law principles that govern the formation of contracts." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (internal quotations omitted). Rocket Mortgage cites to Michigan law in parts of its motion to compel and identifies Michigan law as "governing the Terms of Use to which [MacDonald] agreed." (Doc. 13 at 7.) Rocket Mortgage does not explain why the choice-of-law provision in the Terms of Use should apply given that the present dispute involves the enforceability of the Terms of Use. *See Kaufman v. Am. Exp. Travel Related Servs. Co.*, No. 07-C-1707, 2008 WL 687224, at *3 (N.D. Ill. Mar. 7, 2008) ("Only if the court finds a valid contract may it turn to the choice of law provision in the Agreement in order to determine the validity of the arbitration provision."). But MacDonald does not squarely argue against application of Michigan law and instead contends the same analytical framework governs "[r]egardless of which state's law applies[.]" (Doc. 26 at 1.) For purposes of resolving the motion to compel arbitration, the court need not resolve which state's laws apply as neither party has identified any material difference between the potentially-applicable laws.

A valid contract requires the parties "manifest their mutual assent to the terms of the agreement." *Berman*, 30 F.4th at 855. This applies "with equal force to contracts formed online." *Id.* "Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Id.* at 856.

In evaluating whether a user sufficiently assented to the terms of an online contract, the Ninth Circuit follows a two-part test. *See id.* (applying two-part test to determine whether agreement to arbitrate had formed). First, the website must provide "reasonably

conspicuous notice of the terms to which the consumer will be bound." *Id.* And second, the consumer must "take[] some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.*

The portion of the Rocket Mortgage website critical to this analysis creates, if valid, a "hybrid" or "modified clickwrap" agreement. In terms of enforceability, hybrid agreements fall between pure "clickwrap" agreements (those that prompt users to check a specific box saying, for example, "I agree to the terms of use") and "browsewrap" agreements (those that users are deemed to have accepted simply by continuing to use a website displaying the terms of use). *Id.* Courts have usually found clickwrap agreements to be enforceable because checking a specific box agreeing to the terms of use satisfies both the notice and action tests, but they are more reluctant to enforce browsewrap agreements (which may leave customers unaware that they are accepting terms of use). *Id.* Hybrid agreements, which fall somewhere in the middle of the spectrum, require a close analysis of the webpage itself under the notice and action prongs.

Here, the parties do not seriously dispute that MacDonald's submission of his address information before clicking the "Click to See Your Results!" button satisfies the action requirement. To satisfy the "unambiguous manifestation of assent" standard, "[a] user's click of a button" will be sufficient "only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* at 857. That is, it must be clear to the user "what action would constitute assent" to the relevant terms and conditions. *Id.* Because Rocket Mortgage's website explicitly advised "By submitting your contact information you agree to our Terms of Use . . .[,]" MacDonald took an action sufficient to manifest his consent. *Cf. id.* at 857 ("A user's click of a button can be construed as an unambiguous manifestation of assent . . . if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement.").

That leaves only the question of whether MacDonald should have understood what he was agreeing to before submitting his address, that is, whether Rocket Mortgage's

communication consent was "reasonably conspicuous" such that "the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* at 856.

In evaluating whether a website notice meets the "reasonably conspicuous" requirement, courts have considered (1) the size of the text; (2) the color of the text as compared to the background it appears against; (3) the location of the text (and specifically its position and proximity with respect to the button the user clicks to manifest assent); (4) the obviousness of hyperlinks to the terms of use appearing in the text; and (5) the layout of the rest of the screen, i.e., whether other elements clutter or draw attention away from the agreement. *See Cavanaugh v. Fanatics, LLC*, No. No. 1:22-CV-01085-JLT-SAB, 2024 WL 3202567, at *5 (E.D. Cal. June 26, 2024); *see also Berman*, 30 F.4th at 856 (examining whether the user's attention is drawn away from the critical text, the obviousness of any hyperlinks, the font size, and the contrast between the font color and its background).

Although not a slam dunk on every factor, the communication consent on Rocket Mortgage's webpage provided "reasonably conspicuous" notice such that a reasonably prudent internet user would have seen it.[3] The text in the "Communication Consent" section of Rocket Mortgage's webpage used a smaller font size than the remainder of the page. But, unlike in *Berman*, the font was not "tiny." *Berman*, 30 F.4th at 856; *see also Daschbach v. Rocket Mortg., LLC*, No. 22-CV-346-JL, 2023 WL 2599955, at *9 (D.N.H. Mar. 22, 2023) (finding text insufficiently conspicuous where font color and size made it "almost indecipherable to the naked eye"). And Rocket Mortgage drew attention to that section by providing a title, "Communication Consent," in bold black font approximately the same size and color as the "Current Mailing Address" and "ZIP code" fields. *See Domer v. Menard, Inc.*, 116 F.4th 686, 697–98 (7th Cir. 2024) (noting bold font encouraged a reasonable user to read the notice below).

The text within the section was in a black font on a white background, again

---

[3] Even when a hybrid agreement meets the "reasonably conspicuous" standard, that agreement style "is not without its risks and invites second-guessing." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023). "To ensure that an online agreement passes muster, clickwrap is the safest choice" even when a hybrid website presents terms in a reasonably conspicuous manner. *Id.*

weighing in Rocket Mortgage's favor. The contrast between black text and a "clean, white background" helps draw the user's attention to the notice. *Compare id*. *with Daschbach*, 2023 WL 2599955, at *7 (notice was insufficiently conspicuous where "small gray font [was] set against a gray background," whereas previous pages had used a white background).

The fact that the "Communication Consent" is below the button the user must click to manifest assent weighs against Rocket Mortgage. It is more likely a user will notice they are entering a hybrid clickwrap agreement if the relevant notice is above or adjacent to the button instead of below it. *See Lee v. Panera Bread*, No. 1:22-CV-11958, 2023 WL 2606611, at *4 (E.D. Mich. Mar. 6, 2023), *report and recommendation adopted*, No. 1:22-CV-11958, 2023 WL 2603934 (E.D. Mich. Mar. 22, 2023). But the text's position is not dispositive: text below the button, even (as here) separated by a few lines, may support reasonably conspicuous notice. *See Lee v. Ticketmaster, L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020). Additionally, that no scrolling is required for a user to see the "Communication Consent" below the "Click to See Your Results!" button weighs in favor of notice.[4] *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (collecting cases rejecting reasonably conspicuous notice where user was required to scroll to see terms); *cf. Dahdah v. Rocket Mortg., LLC*, No. 22-11863, 2023 WL 11944898, at *9 (E.D. Mich. Nov. 17, 2023), *reconsideration denied*, No. 22-11863, 2024 WL 4299564 (E.D. Mich. Sept. 26, 2024) (website requiring scrolling to see notice "suggests that a user is less likely to notice the text and more likely to click the button before reading") (citation omitted).

The fourth factor—the obviousness of hyperlinks—also supports reasonably conspicuous notice here. The hyperlinks to Rocket Mortgage's terms of use are bright blue (albeit not underlined), which called users' attention to them. *See Oberstein v. Live Nation Ent.*, 60 F.4th 505, 516 (9th Cir. 2023) ("[C]rucially, the 'Terms of Use' hyperlink is

---

[4] MacDonald argues that some scrolling would have been necessary to see the full notice. (Doc. 26 at 5.) That assertion is not supported by any evidence and contradicts the exhibits he submitted, which show that scrolling would not have been necessary.

- 7 -

conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent"); *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1070 (C.D. Cal. 2023) (distinguishing hyperlink that was "bright magenta" and underlined, providing reasonably conspicuous notice, from one that was merely underlined "but . . . not set apart in any other way that may draw attention of the consumer, such as with blue text[.]") (internal quotation marks and citation omitted). And the blue hyperlinks were in the first line of text immediately below the bolded and larger "Communication Consent" heading, further helping to catch a reasonably prudent internet user's eye.

As to the final factor, there was nothing distracting about the layout of the webpage to obscure the "Communication Consent" or require users to "parse through confusing or distracting content and advertisements." *Shirley v. Rocket Mortgage*, No. 2:21-cv-13007, 2022 WL 2541123, at *6 (E.D. Mich. July 7, 2022) (simplified). The layout is simple and clear, with black text on an uncluttered white background. *See Ehrmantraut*, 2024 WL 1893999, at *4. MacDonald's assertion that the website contained a distracting "page-wide advertisement with photographs" is contradicted by his own exhibits and therefore insufficient to defeat Rocket Mortgage's evidence. (*Compare* Doc. 26 at 4 *with* Doc. 26-2 at 10.) Viewed as a whole, a reasonably prudent consumer would have seen the "Communication Consent" section before clicking on the button. That is all that was required.

MacDonald primarily relies on two cases to argue the court should reach the opposite conclusion but neither of those cases involved sufficiently similar facts.[5] Taking the two cases in chronological order, the first is *Daschbach*, 2023 WL 2599955, at *1. That case involved a webpage somewhat similar to the final webpage MacDonald encountered. *Id.* at *7 (providing picture of webpage). In reviewing that page, the court held there were elements that weighed both in favor and against finding the "Terms of Use" reasonably

---

[5] Rocket Mortgage is a defendant in these cases, but they involved a different website than the one at issue here. *See Daschbach* 2023 WL 2599955, at *1; *Dahdah*, 2023 WL 11944898, at *1. This makes MacDonald's argument that "[t]he Court should deny Rocket Mortgage's motion to compel arbitration for the same reason other district courts across the country have denied substantively similar motions by Rocket Mortgage" unavailing. (Doc. 26 at 1.)

1 conspicuous. *Id.* at *7–10. The elements weighing in favor of finding the notice sufficient included the hyperlinked "Terms of Use" phrase appearing "in underlined, blue font" and a lack of other design elements "that could distract the user from the language" regarding the applicable terms. *Id.* at *7, *9. But these elements were significantly outweighed by the fact the relevant text was in "small gray font . . . set against a gray background," making the crucial text "almost indecipherable to the naked eye." *Id.*

The other case is *Dahdah*, 2023 WL 11944898. Like *Daschbach*, the notice was found on a webpage with the phrase "Terms of Use" hyperlinked in blue and underlined. *Id.* at *4. But the court concluded there had not been sufficient notice because most of the relevant text was in "tiny light gray font" unlike the "larger, bolder, black font used for most of the text on all the webpages a user sees during their visit." *Id.* at *9.

Unlike the text in *Daschbach* and *Dahdah*, the page MacDonald encountered had a section titled "Communication Consent," with that title in bolded text. The remaining text was black on a white background in a font only slightly smaller than other text on the page.[6] The hyperlinks in that text were blue, drawing the user's attention to them. And while the text was below the button, all record evidence suggests that it was visible when the user performed the crucial click. The page MacDonald encountered was sufficiently different from that in *Daschbach* and *Dahdah* to merit a different result. As a result, Rocket Mortgage's motion to compel arbitration is granted.

/
/
/
/
/

---

[6] Beyond relying on *Daschbach* and *Dahdah*, MacDonald makes a variety of other arguments that are factually incorrect. MacDonald argues of the eighteen webpages on the website, only the eighteenth one included the terms of service. That is incorrect as his own filing admits the "footer" containing a hyperlink to the Terms of Use was "repeated throughout application." (Doc. 26-2 at 1.) MacDonald also argues most of the pages were simple, but the eighteenth page was "relatively more complicated." Again, MacDonald's own exhibit does not bear this out as the pages are very similar in their level of complexity. (*Compare* Doc. 26-2 at 10 *with* Doc. 26-2 at 1–9.)

Accordingly,

**IT IS ORDERED** Rocket Mortgage's motion to compel arbitration (Doc. 13) is **GRANTED** and the motion to dismiss (Doc. 14) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to administratively close this case, whereupon, by proper motion from a party, it may be reopened or dismissed with prejudice.

Dated this 23rd day of December, 2024.

Honorable Krissa M. Lanham
United States District Judge